**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

         -against-

                                               **MEMORANDUM OF**
JAMES E. WRIGHT,                        **DECISION AND ORDER**
                                              10-cr-504-S-1 (ADS) (ARL)

                         Defendant.
-----------------------------------------------------------X

**APPEARANCES:**

**Loretta Lynch**
United States Attorney
610 Federal Plaza
Central Islip, NY 11722
        By:    Lara Treinis Gatz,
                  Christopher Charles Caffarone,
                  Assistant United States Attorneys

**Law Offices of Glenn A. Obedin**
*Attorneys for the Defendant*
320 Carleton Avenue
Suite 4200
Central Islip, NY 11722
        By:    Glenn A. Obedin, Esq., of Counsel

**SPATT, District Judge.**

      The Defendant in this case, James E. Wright, filed a motion to suppress any

evidence obtained by government agents from the search of his residence and

certain post-arrest statements obtained by government agents. For the reasons that

follow, the Defendant's motion is denied in all respects.

## I. BACKGROUND

      In or about March 2008, Wright recruited a confidential witness ("CW") to

assist him in what was suspected to be his cocaine and crack business. On several

occasions, the CW and the Defendant went to a residence located at 1 Vanderbilt Drive, Apt. E-81, Mineola, New York (the "Subject Premises"), to retrieve narcotics for use in pre-arranged drug transactions. The Government contends that the Subject Premises was a stash house for narcotics, cash and firearms. According to the Government, the Defendant gave the CW his own key to the Subject Premises and told him to stay there at his leisure, which the CW did approximately five times, staying as long as one week on one occasion.

On May 17, 2008, the CW and the Defendant were arrested in Hempstead, New York, while in the process of making a drug transaction. According to the Defendant, at the time of his arrest, he was seated alone in the driver's seat of a 2009 Pontiac rental vehicle in the parking lot of a 7-11 store. The officers allegedly forcibly removed him from the vehicle, searched him, and handcuffed him. Wright was then placed in a law enforcement vehicle and driven to a Nassau County Police Precinct. He arrived at the precinct around 6:00pm and was placed in a locked interrogation room. The Defendant alleges that over the course of the next ten hours, he repeatedly asked the police officers to allow him to call his lawyer, but the officers refused to allow him to make any calls.

As for the CW, later in the day after his arrest, he advised police officers of the location of the Subject Premises and that he possessed a key to the residence. The CW then led the police officers to the location, while informing them that he knew the code to disarm the burglar alarm and providing them with specific details as to the layout of the apartment. As promised, the key in the CW's possession

2

unlocked the front door to the Subject Premises and the CW was able to disarm the burglar alarm. Once inside, the officers observed narcotics in plain view.

On May 18, 2008, at approximately 3:30am, the police informed the Defendant of the search and what they had uncovered. The officers also told the Defendant that the CW had given them permission to search the Subject Premises and that he had given the police both the key to the residence as well as the code for the alarm. According to the Defendant, the CW did not have the key to the residence nor did he know the alarm code. Moreover, the Defendant also alleges that the CW had no authority, either actual or apparent, to authorize a consent search of that apartment.

The Defendant claims that he never made any oral statements to the police, except to repeatedly request permission to call an attorney. He does not remember the police ever giving him his <u>Miranda</u> warnings. According to the Government, the Defendant was advised of his <u>Miranda</u> rights before he made inculpatory statements.

## II. DISCUSSION

**A. <u>As to Whether the CW Properly Gave Consent to Search the Subject Premises</u>**

In general, a warrantless police search of a defendant's private premises will not violate a defendant's Fourth Amendment rights if it is conducted pursuant to the consent, voluntarily given, of another person who has authority to consent by reason of that person's "common authority over or other sufficient relationship to the premises." <u>United States v. Matlock</u>, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L.

Ed. 2d 242 (1974); see United States v. McGee, 564 F.3d 136, 138-39 (2d Cir. 2009). The Supreme Court's decision in Matlock sets forth the test for actual authority. Under Matlock, "common authority" is not based on the law of property but rather

> on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the cohabitants has the right to permit inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

Id. at 171 n. 7, 94 S. Ct. 988.

In United States v. Davis, 967 F.2d 84, 87 (2d Cir. 1992), the Second Circuit stated that a third-party may validate a search by giving the authorities consent to search "if two prongs are present: first, the third party had access to the area searched, and, second, had either: (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access." The permission to gain access may be express or implied. See United States v. Gradowski, 502 F.2d 563, 564 (2d Cir. 1974) (per curiam) (finding consent to search a car valid where the consenting party was in possession of car and keys); United States v. Buettner–Janusch, 646 F.2d 759, 765 (2d Cir. 1981) (finding consent valid where the consenting party was a co-worker who had been given keys to the area searched and had standing permission to use the premises); United States v. Pravato, 505 F.2d 702, 703 (2d Cir. 1974) (finding consent valid where the consenting party was the owner of a single family home in which the objecting defendant was a non paying guest for three days); United States v. Isom, 588 F.2d 858, 860 (2d Cir. 1978)

(finding consent valid where the consenting party was the lawful tenant of the apartment); U.S. v. Trzaska, 859 F.2d 1118, 1120 (2d Cir. 1988) (finding consent valid where the consenting party, the estranged wife of the defendant, possessed a key to the premises and was on the premises to remove her personal belongings).

While the voluntariness of the CW's consent is not contested, the Defendant contests his authority to consent to a search of the apartment. The Government contends that the CW had access to the Subject Premises and permission to gain access, as evidenced by his possession of a key as well as his knowledge of the alarm code. The Defendant asserts that the CW had no formal propriety interest that afforded him a right to enter, and that any access he enjoyed came to him solely as Wright's invitee.

As an initial matter, the Defendant contends that the CW did not have possession of a key and that any code he had to the burglar alarm was incorrect. This assertion is sufficient to warrant a suppression hearing before this Court. The Federal Rules of Criminal Procedure "requir[e] the judge to receive evidence on any issue of fact necessary to the decision on a . . . motion to suppress." Charles A. Wright et al., 3 Federal Practice & Procedure § 675 (2d ed. Supp.2001). Although suppression hearings are not always required, a court should hold a hearing when the motion alleges facts that, if proved, would require the suppression of evidence. See id.

Here, the Defendant's affidavit, which states that the CW "did not have the key to my apartment, nor did he know the alarm code", leads the Court to conclude that there are contested issues of fact as to whether the CW possessed the key to the

Subject Premises or the alarm code. If in fact the CW did not possess the key to the Subject Premises or the alarm code, the Court would likely find that the CW did not possess actual authority to consent to a search of the Subject Premises because he would not have had actual access to the residence. In other words, any finding of actual authority necessarily hinges upon the CW's possession of the key or alarm code, which is a disputed issue of fact the Court cannot resolve without a hearing.

In addition, this factual dispute precludes a finding as to apparent authority. It is beyond dispute that, even if a person lacks actual authority to provide consent to search another's private premises, the consent may nevertheless validate the government search "if the person reasonably appeared to the police to possess authority to consent to the search." McGee, 564 F.3d at 139. The critical inquiry when the government relies on apparent authority is an objective one: "[W]ould the facts available to the officer at the time the consent is given warrant a person of reasonable caution in the belief that the consenting party had authority over the item to be searched?" United States v. James, 353 F.3d 606, 615 (8th Cir. 2003). "The standard of reasonableness is governed by what the law-enforcement officers know, not what the consenting party knows." Id. In determining whether the agents' reliance on consent of a third party is reasonable, the rule "is not that they always be correct, but that they always be reasonable." Illinois v. Rodriguez, 497 U.S. 177, 185, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990).

Here, the Court cannot determine whether it was reasonable for the officers to believe that the CW had apparent authority over the premises without first determining whether the CW actually had a key to the Subject Premises given to

him by the Defendant and/or the CW knew the code to deactivate the burglar alarm. If the Court finds after an evidentiary hearing that these facts are established, then it is possible that apparent authority may be found because several courts have held that consent to search was valid under similar circumstances. See, e.g., U.S. v. Waits, 285 Fed App'x 465, 466 (9th Cir. 2008) ("We affirm the district court's denial of Waits's motion to suppress because Hernandez had apparent authority to consent to the warrantless entry and search. . . . Hernandez said he was Waits's roommate; gave the officers the impression that he had a key; brought the policemen to the door of the room; and knew that the door was unlocked."); U.S. V. Goins, 437 F.3d 644 (7th Cir. 2006) (finding that the defendant's girlfriend had apparent authority over his apartment to consent to search of apartment because girlfriend consistently stated she had a key to the apartment, possessions within apartment, that she lived in apartment on-and-off, that she frequently cleaned and did household chores in apartment, that she was allowed into apartment when defendant was not home"); United States v. Rodriguez, 888 F.2d 519 (7th Cir. 1989) (finding wife's possession of a key to estranged husband's janitor's office gave her apparent authority to consent to search of office). See also United States v. Yarbrough, 852 F.2d 1522, 1534 (9th Cir. 1988) ("A party who has a key to the premises . . . can give a valid consent to search." (internal quotation omitted)); U.S. v. Garcia, No. 10 Cr. 176-2, 2010 WL 4736497, at *4 (N.D. Ill. Nov. 6, 2010) ("In determining if a person has apparent authority to consent to a search, law enforcement officers may consider a variety of factors, including whether the person consenting possesses a key to the home, lives at the residence, or performs

household chores at the home.").  Cf. Riley v. Grey, 674 F.2d 522 (6th Cir. 1982) (finding no apparent authority because even though the consenter had keys to the apartment, he did not come into possession of the keys until the night in question, he was not a regular visitor to the apartment, and he did not have permission to enter the apartment when the petitioner was not there).  However, if the CW did not have a key to the Subject Premises or the correct code to the burglar alarm, it would seriously undermine any appearance of apparent authority claimed by the Government agents.

In sum, an evidentiary suppression hearing will be necessary for the Court to properly decide the Defendant's motion to suppress the evidence obtained from the search of his residence.

**B.  As to Whether the Post-Arrest Statements Are Admissible**

The Defendant also argues that any post-arrest statements he made to officers should be suppressed because they were tainted by the illegal search, and that merely advising Mr. Wright of his rights under Miranda does not attenuate the taint.  However, as the Court has found that the search at issue was not illegal, Wright's post-arrest statements were not the fruit of the poisonous tree, and thus need not be suppressed.

In addition, the Defendant acknowledges that he may have made certain oral statements to the police in response to being informed of the search of his apartment, but appears to allege that he did not knowingly and voluntarily waive his rights when making such statements.  However, the Court agrees with the Government that if he chose to voluntarily make statements to police after being

informed of his <u>Miranda</u> rights, then he waived the right to remain silent by making a statement to the police.  <u>See Berghuis v. Thompkins</u>, 130 S. Ct. 2250, 2263, 176 L. Ed. 2d 1098 (2010) ("If Thompkins wanted to remain silent, he could have said nothing in response to [the officer's] questions, or he could have unambiguously invoked his <u>Miranda</u> rights and ended the interrogation.  The fact that Thompkins made a statement about three hours after receiving a <u>Miranda</u> warning does not overcome the fact that he engaged in a course of conduct indicating waiver."). There is nothing to indicate that the Defendant was not properly read his <u>Miranda</u> rights or that he did not understand its warnings.

Moreover, a hearing as to the suppression of Wright's oral statements is not necessary, in that he has failed to make the requisite showing for an evidentiary hearing.  "A defendant seeking a <u>Miranda</u> suppression hearing must make more than a 'bald assertion' that the statement in question was involuntary.  If the defendant's request for a hearing is not accompanied by a sufficient specification of the factual basis for the characterization, the district court is not required to hold a suppression hearing."  <u>United States v. Davis</u>, No. 08 Cr. 664, 2009 WL 331366, at *1 (E.D.N.Y. Feb. 11, 2009).

Therefore, the Defendant's motion to suppress his post-arrests statements is denied.

As a final matter, the Defendant also requests that the Court issue an order directing the government to produce all exculpatory material as required under <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  To the extent that the Government has yet to provide such material "in a manner that gives

the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial," Rodriguez, 496 F.3d 221 (2d Cir. 2007), the Government is directed to do so forthwith.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendant, the Government, and all relevant witnesses, are directed to appear for an evidentiary hearing in connection with the motion to suppress on April 20, 2012 at 1:30pm in Courtroom 1020; and it is further

**ORDERED** that the Defendant's motion to suppress any post-arrest statements obtained by government agents is DENIED; and it is further

**ORDERED** that the Government is directed to provide all exculpatory material required by Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), forthwith.


**SO ORDERED.**

Dated: Central Islip, New York
April 2, 2012

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge